## COMMONWEALTH *vs.* JESSEN REDDY.

No. 13-P-155.

Essex. December 6, 2013. - March 19, 2014.

Present: GRASSO, KAFKER, & GRAHAM, JJ.

*Assault and Battery. Abuse Prevention. Constitutional Law,* Assistance of counsel. *Practice, Criminal,* Assistance of counsel, New trial, Instructions to jury. *Evidence,* Prior misconduct, Court record.

At the trial of a criminal complaint charging violation of an abuse prevention order under G. L. c. 209A, § 7, and assault and battery, defense counsel's failure to object to improper propensity evidence and argument concerning prior findings in a civil proceeding regarding the defendant's substantial likelihood to abuse the victim constituted ineffective assistance of counsel creating a substantial risk of a miscarriage of justice as to the conviction of assault and battery, given that the evidence supporting that charge was not overwhelming and was completely tied to the credibility of the victim [108-111], but not as to the conviction of violation of the abuse prevention order, given the overwhelming evidence supporting that charge [111].

There was no merit to a criminal defendant's claim of ineffective assistance arising from his counsel's failure to argue that the admission in evidence of the return of service by a court officer on a G. L. c. 209A restraining order, without that officer's live testimony, violated the defendant's confrontation rights. [111-112]

At the trial of a criminal complaint charging, inter alia, violation of an abuse prevention order under G. L. c. 209A, § 7, the instruction, as a whole, adequately instructed the jury on that charge. [112-113]

COMPLAINT received and sworn to in the Lynn Division of the District Court Department on January 3, 2007.

Following review by this court, 76 Mass. App. Ct. 1112 (2010), a motion for a new trial, filed on November 15, 2010, was heard by *Michael C. Lauranzano,* J.

*Kathryn Hayne Barnwell* for the defendant.

*Paul C. Wagoner,* Assistant District Attorney, for the Commonwealth.

KAFKER, J. The defendant, Jessen Reddy, was convicted of

violation of an abuse prevention order under G. L. c. 209A, § 7, and assault and battery under G. L. c. 265, § 13A(*a*). In this, his second appeal, based on the denial of his motion for new trial, he raises numerous claims of ineffective assistance of counsel, both trial and appellate. The claim of significance concerns trial counsel's failure to object when the following language from the unredacted abuse prevention order was introduced in evidence and highlighted by the prosecutor in her closing: "THERE IS A SUBSTANTIAL LIKELIHOOD OF IMMEDIATE DANGER OF ABUSE. YOU ARE ORDERED TO IMMEDIATELY SURRENDER to the Lynn Police Department all guns, ammunition, gun licenses . . . ." We conclude that the prosecutor's particular emphasis on the "substantial likelihood" of abuse language — exploiting the issuing judge's previous findings regarding both the likelihood of the defendant to abuse the victim as well as the credibility of the victim — to prove violation of the abuse prevention order and the assault and battery was highly prejudicial. We further conclude that defense counsel's failure to redact this highlighted language from the abuse prevention order and to object to the prosecutor's emphasis on it in closing constituted ineffective assistance of counsel that created a substantial risk of a miscarriage of justice requiring a reversal of the defendant's conviction of assault and battery. However, we affirm the conviction of violating the abuse prevention order itself as the evidence was overwhelming that the defendant knew of the terms and conditions of the order, and at least contacted the victim and appeared at her residence in violation of the order.

*Background.* On October 4, 2006, a hearing was held on the victim's application for an abuse prevention order against the defendant. The two had dated "off and on" for six years and had a child together. Both parties were in attendance at the hearing,[1] and the abuse prevention order was granted for one year, ending October 4, 2007. The order prohibited the defendant from abusing or contacting the victim and required him to stay away from her residence and workplace and fifty yards from her person. On the day of the hearing, he was served with

---

[1]The victim testified that the defendant was "standing right next to me" when the issuing judge granted the order.

a copy of the order by a court officer, according to the return of service attached to the order.

On December 31, 2006, at around 2:30 P.M., the victim heard the doorbell to her residence in Lynn ring "about twenty times" along with "about five or six" bangs on the door. She observed the defendant through the glass. As they argued, she told him to leave or she would use the cordless telephone she was carrying to call the police. She testified that when she eventually opened the door, the defendant hit her in the forehead with his open hand. When she followed him out to his car to write down his license plate number to give to the police, he grabbed the telephone from her hand and threw it at her and then struck her on the side of the face, again with an open hand. The jury also heard testimony that later that same day, the defendant followed the victim to a bank parking lot in Salem and sounded his car horn at her two to three times.

At the trial, the Commonwealth's only witness was the victim, who testified as discussed *supra*. The Commonwealth also introduced in evidence the abuse prevention order over the defendant's hearsay objection. The abuse prevention order included the return of service. The defense was that the victim was not credible, and the defendant did not have knowledge or notice of the terms of the order. The defendant's only witness was a Lynn police officer who testified, on cross-examination, that he responded to the victim's call at 2:30 P.M. and thereafter sought an arrest warrant for the defendant. The recording of the officer's direct testimony was reported as missing in the trial transcript.[2]

In closing argument, the defense emphasized that the victim had no knowledge whether the defendant was served with the abuse prevention order and there was no testimony from the person who served the order, or as to even who that person was. The defense also attacked the victim's credibility by pointing out minor differences in her testimony versus what the Lynn police officer testified she told him.[3] The Commonwealth, in its closing, stated that it was "lucky" because the defendant violated

[2]Neither party attempted to recreate the direct testimony pursuant to Mass. R.A.P. 8(e), as amended, 378 Mass. 932 (1979).

[3]Those differences included whether she had been struck in the face or the

all three of the conditions of the abuse prevention order when
he showed up at her residence, argued with her there, and struck
her.[4] The prosecutor then made the following argument:

> "Now, when I'm talking about the restraining order and
> before I go into the elements of the crime of assault and
> battery I think that it's important that you know that when
> a judge issues a restraining order . . . you'll see this on
> the restraining order. . . . When a judge issues a restrain-
> ing order he has to find that there's a substantial likeli-
> hood of imminent danger of abuse. . . . So when [the
> victim] came in to get that restraining order, based on
> what she told the judge, the judge found that there was
> . . . a substantial likelihood of an imminent danger of
> abuse. Now, that leads me to the assault and battery charge."

There was no objection.

The jury convicted the defendant of both crimes, and the
defendant appealed, through his first appellate counsel, on the
ground that evidence and argument on the second incident (in
Salem), which occurred outside the jurisdiction of the Lynn
Division of the District Court Department, was improper. This
court rejected this argument in a memorandum and order pursu-
ant to our rule 1:28, concluding that the judge did not err in al-
lowing the Salem incident to be considered as subsequent bad
act evidence relevant to motive. See *Commonwealth* v. *Reddy*,
76 Mass. App. Ct. 1112 (2010). Further appellate review of the
decision was denied.

Thereafter, the defendant, through his second appellate counsel,
filed a motion for new trial, raising the following issues that are
the subject of this appeal: that trial counsel was ineffective (1)
for not objecting to the language from the unredacted abuse
prevention order that was introduced in evidence and highlighted
by the prosecutor in her closing; (2) for failing to argue that the

forehead and when she told the officer that she had an active abuse prevention
order against the defendant.

[4]The defendant argues that it was improper for the prosecutor to argue that
it was lucky in this regard because she was injecting her personal belief in
this comment. We do not consider this statement, or other personal statements
made by the prosecutor in closing argument, to rise to the level of improper
vouching.

admission of the return of service on the abuse prevention order by a court officer without that court officer's live testimony violated the defendant's confrontation rights; and (3) for not requesting a general knowledge instruction on the violation of the order charge, and failing to object when it was not given. The motion judge, who was also the trial judge, summarily denied the motion for new trial.

*Discussion.* 1. *Standard of review.* The defendant claims that he is entitled to a new trial due to ineffective assistance of trial counsel and his first appellate counsel. "[W]e review the defendant's motion for a new trial — whether based on the error itself or framed as a claim of ineffective assistance of counsel — solely to determine whether the error gives rise to a substantial risk of a miscarriage of justice." *Commonwealth* v. *Acevedo*, 446 Mass. 435, 442 (2006), quoting from *Commonwealth* v. *Russell*, 439 Mass. 340, 345 (2003). See *Commonwealth* v. *Azar*, 435 Mass. 675, 685 (2002).

2. *Unredacted abuse prevention order.* In bold text, the abuse prevention order provided: "THERE IS A SUBSTANTIAL LIKELIHOOD OF IMMEDIATE DANGER OF ABUSE. YOU ARE ORDERED TO IMMEDIATELY SURRENDER to the Lynn Police Department all guns, ammunition, gun licenses . . . ." This language by its express terms describes the substantial likelihood that the defendant would abuse the victim. While such proof is essential in the civil proceedings resulting in the issuance of the abuse prevention order in the first instance, see G. L. c. 209A, § 4, it has no place in a criminal trial on charges of violating the abuse prevention order or assault and battery. This type of predictive or propensity evidence is not admissible to prove a crime. See *Commonwealth* v. *Butler*, 445 Mass. 568, 574 (2005) ("It is well settled that the prosecution may not introduce evidence of a defendant's prior or subsequent bad acts for the purpose of demonstrating bad character or propensity to commit the crime[s] charged"), quoting from *Commonwealth* v. *Barrett*, 418 Mass. 788, 793 (1994). See also *People* v. *Zackowitz*, 254 N.Y. 192, 197 (1930) (in decision by Chief Justice Cardozo, court explained, "[T]he law has set its face against the endeavor to fasten guilt upon him by proof of character or experience predisposing to an act of crime").

We understand that proof of the abuse prevention order itself is required to establish violation of the order. We also understand that particular elements of the order — including the duration of the order, the conditions that were violated, and the defendant's knowledge of those conditions — must be established. See *Commonwealth* v. *Collier*, 427 Mass. 385, 388 (1998) (prosecution for c. 209A violation "requires no more knowledge than that the defendant knew of the order" and violated it), quoting from *Commonwealth* v. *Delaney*, 425 Mass. 587, 596 (1997), cert. denied, 522 U.S. 1058 (1998); *Commonwealth* v. *Leger*, 52 Mass. App. Ct. 232, 235 (2001) ("Three elements had to be proved in order to obtain a conviction: [a] that such an order was in existence; [b] that the defendant knew of its terms; and [c] that the defendant violated those terms"); *Commonwealth* v. *Raymond*, 54 Mass. App. Ct. 488, 492 (2002) ("To convict a defendant of violation of a c. 209A order, the Commonwealth must prove beyond a reasonable doubt that a court had issued such an order, that the order was in effect on the date that the violation allegedly occurred; that the defendant knew the pertinent terms of the order; and that the defendant violated the order"). Consequently, unless there is an appropriate stipulation, at least a redacted abuse prevention order often is introduced to prove the crime of violation of that order. The "substantial likelihood" of abuse finding necessary to issue the abuse prevention order, however, is irrelevant to the criminal trial, as it is not one of the elements of the crime of violating the order. See *Commonwealth* v. *Collier, supra.*[5]

We then must evaluate the prejudicial effect of admission of this type of predictive or propensity evidence. We understand that the jury would generally be aware that the abuse prevention order would not have been issued without some prior altercation between the defendant and the victim and some concern

---

[5]The Commonwealth does not need to prove again all of the elements of the order to show its violation. What the Commonwealth must prove are the elements discussed *supra* and that the order was "valid" in the sense that the defendant was given "notice of the proceedings, and . . . an opportunity to be heard at a meaningful time and place." *Edge* v. *Commonwealth*, 451 Mass. 74, 78 n.4 (2008).

about it being repeated.[6] Here, however, the prosecutor focused the jury's attention on the substantial likelihood of abuse evidence and exploited it in her closing.

The prosecutor was unnecessarily and improperly highlighting not only the finding of the defendant's likelihood to commit the crime, but also the issuing judge's finding of such likelihood based on his crediting of the victim's testimony. The "judicial imprimatur" on the finding and on the victim's credibility provide them "significant weight." *Commonwealth* v. *Foreman*, 52 Mass. App. Ct. 510, 515 (2001). See *Commonwealth* v. *Fitzgerald*, 380 Mass. 840, 846 (1980) ("the effect on the jury of whatever a judge says or does may be significant"). The jury were presented with these findings without objection and without limiting or curative instructions explaining the very different purpose and burden of proof for the issuance of the abuse prevention order. The language in the order referencing the surrender of guns and ammunition enhances the prejudicial effect, depicting the defendant not only as substantially likely to abuse the victim but also as having dangerous weapons in his possession. Without instruction the jury could not be expected to understand that the requirement that the defendant surrender all guns and ammunition was a standard requirement not specifically addressed to him.

The question then is whether we have "a serious doubt whether the result of the trial might have been different had the error not been made." *Commonwealth* v. *LeFave*, 430 Mass. 169, 174 (1999). In making this determination we must examine "the strength of the Commonwealth's case, the nature of the error, the significance of the error in the context of the trial, and the possibility that the absence of an objection was the result of a reasonable tactical decision." *Commonwealth* v. *Azar*, 435 Mass. at 687. The only evidence of the assault and battery was the testimony of the victim. There were no other witnesses, and no physical evidence was presented. The evidence of the assault and battery was therefore sufficient but not overwhelming, and

---

[6]More generally, the existence of the abuse prevention order itself also may be admissible to demonstrate the hostile relationship between the parties and the defendant's motivations, but that is again a different inquiry from whether the defendant has a propensity to commit the crimes with which he is charged.

was completely tied to the credibility of the victim. The prosecutor's use of the issuing judge's prior findings was particularly prejudicial in this context. Also, there was certainly no tactical or strategic reason not to redact the language of the order and to object to the prosecutor's closing argument, as attested by trial counsel in her affidavit. In this context, we conclude that trial counsel's failure to seek to redact the order's language and to object to the prosecutor's particular emphasis on it created a substantial risk of a miscarriage of justice as to the assault and battery conviction.

We do not, however, have serious doubts about whether the jury would have reached a different result regarding the conviction of violating the abuse prevention order. The primary defense on this charge was lack of knowledge of the terms and the conditions of the order, not that the defendant did not contact the victim or show up at her residence. Although the victim's credibility certainly was enhanced by the substantial likelihood of abuse evidence and argument, the jury would have been required to find the entire incident to be completely fabricated, without a triggering event, to acquit the defendant of violation of all three conditions of the abuse prevention order. The motion judge (who was the trial judge) was in a particularly good position to make this evaluation of her credibility. See *Commonwealth* v. *Figueroa*, 422 Mass. 72, 77 (1996).

3. *Return of service.* The defendant also claims ineffective assistance by his first appellate counsel in failing to argue that the admission of the return of service by a court officer without the live testimony of that court officer violated the defendant's confrontation rights. The merits of this particular claim, as the defendant recognizes, were directly rejected in *Commonwealth* v. *Shangkuan*, 78 Mass. App. Ct. 827, 833-834 (2011), in which we held that "a c. 209A completed return of service is admissible under the public records exception to the hearsay rule and . . . is nontestimonial for purposes of the confrontation clause." *Id.* at 828. The reasons for this ruling were carefully delineated in that decision and need not be repeated here. Suffice it to say that we concluded that "the primary purpose for which the return of service . . . was created is to serve the routine administrative functions of the court system . . . . The

return of service . . . was not created for the purpose of establishing or proving some fact at a potential future criminal trial." *Id.* at 833.

The defendant contends nonetheless that *Shangkuan* was wrongly decided and implicitly overruled in *Commonwealth* v. *Parenteau*, 460 Mass. 1 (2011). As *Shangkuan* remains good law, and there is nothing in *Commonwealth* v. *Parenteau* to the contrary, we reject this argument.

In *Commonwealth* v. *Parenteau*, the Supreme Judicial Court concluded that a July 24, 2009, notice by the registry of motor vehicles, issued nearly two months after a criminal complaint had issued for operating a motor vehicle without a license, was testimonial in nature "for the purpose of establishing the fact that a notice of license revocation was mailed to the defendant on May 2, 2007." *Id.* at 8. The court concluded that "it plainly was made for use at the defendant's trial." *Ibid.* The court contrasted this notice with one that could have been "created at the time the notice was mailed and preserved by the registry as part of the administration of its regular business affairs, . . . [which] would have been admissible at trial." *Id.* at 10. The return of service of the abuse prevention order here is clearly more analogous to the latter than the former. Additionally, the court in *Parenteau* went out of its way to reference Appeals Court decisions that might be considered affected by its analysis and made no reference to *Commonwealth* v. *Shangkuan*. See *id.* at 10 n.10. In sum, there was no error in the admission of the return of service without testimony by the court officer.[7]

4. *Jury instructions.* The instructions to the jury on the abuse prevention order violation included the following language on knowledge: "[T]he Commonwealth must prove . . . that the defendant knew of the . . . pertinent terms of the order that were in effect either by having received a copy of the order or [by] having learned of it in some other way." The trial judge did not give the general knowledge instruction in the model

---

[7]We also note that the defendant was present at the hearing when the abuse prevention order issued. Thus, his knowledge of the abuse prevention order was not solely dependent upon the notice established by the return of service.

jury instructions.[8] The instruction given, however, conveyed that the Commonwealth must establish that the defendant "had actual knowledge of the terms of the order." *Commonwealth* v. *Delaney*, 425 Mass. at 592-593. Thus, the "charge, as a whole, adequately covered the issue." *Commonwealth* v. *Walker*, 421 Mass. 90, 100 (1995).

*Conclusion.* For the reasons discussed herein, we conclude that the failure to object to evidence and argument concerning prior findings regarding the defendant's substantial likelihood to abuse the victim constituted ineffective assistance of counsel creating a substantial risk of a miscarriage of justice as to the conviction of assault and battery, and the defendant's motion for new trial on that charge should have been allowed. Thus, the judgment on the charge of assault and battery is vacated and the verdict is set aside. The portion of the order denying the defendant's motion for new trial on the charge of violating the abuse prevention order is affirmed, as is the judgment on that charge.

*So ordered.*

---

[8]"It is obviously impossible to look directly into a person's mind. But in our everyday affairs, we often look to the actions of others in order to decide what their state of mind is. In this case, you may examine the defendant's actions and words, and all of the surrounding circumstances, to help you determine the extent of the defendant's knowledge at that time." Instruction 3.140, Criminal Model Jury Instructions for Use in the District Court (2009).